UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Wham-O Holding, Ltd., et al. | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:20-cv-04196 |
| v. | ) | |
| | ) | Dist. Judge Matthew F. Kennelly |
| Partnerships and Unincorporated Associations Identified on Schedule "A", | ) ) ) | Mag. Judge Maria Valdez |
| | ) | |
| Defendants. | ) | |

**<u>Unreported Opinions Cited in Support of</u>**
**<u>Motion to Vacate Default Judgment</u>**

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 2 of 20 PageID #:2530

**Bally Export Corp. v. Balicar Ltd., Not Reported in F.Supp. (1985)**
1985 WL 2006

1985 WL 2006
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

BALLY EXPORT CORPORATION,
a Delaware corporation, Plaintiff,
v.
BALICAR LTD., a foreign corporation,
and JULIANO INTERNATIONAL,
S.A., a foreign corporation, Defendants.

No. 81 C 516.
|
July 3, 1985.

MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

**\*1** This matter is before the court on motions by defendants Juliano Internacional S.A. ('Juliano') and Balicar, Ltd. to vacate default judgments entered against them in this case on July 7, 1981. When defendants originally brought this motion before the court on May 9, 1985, the court expressed some concern about the fact that nearly four years had passed since the judgments were entered. Therefore, the court asked the parties to file briefs addressing the question of when defendants received notice of this action and why they waited so long to file this motion.

A review of defendants' motions, however, reveals that both defendants are attacking this court's personal jurisdiction over them. They argue that the judgments entered against them are void because they are foreign corporations which do not do business in Illinois. Additionally, defendant Juliano contends that the judgment against it is void because of ineffective service of process. It is clear that a judgment entered by a court which lacks personal jurisdiction over a defendant is a void judgment and a court has a nondiscretionary duty to grant relief from such a judgment. Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rico, 614 F.2d 1247, 1255 (9th Cir. 1980). It is also clear that void judgments cannot acquire validity as a result of laches on the part of the defendant and they may be attacked at any time. Mesco Leasing, Inc. v. Vaugh, 450 F.2d 257, 260 (10th Cir. 1971). Thus, despite the fact that nearly four years have passed since the judgments in this case were entered, since defendants have attacked this court's personal jurisdiction, the court is obligated to address the merits of defendants' motions.

Therefore, defendants are given 20 days to file their memorandums in support of their motions to vacate. Plaintiff is given 20 days thereafter to respond and defendants, 10 days thereafter to reply.

**All Citations**

Not Reported in F.Supp., 1985 WL 2006

---

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works. 1

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 3 of 20 PageID #:2531

**Gersbacher v. Larsen, Not Reported in F.Supp. (1991)**
1991 WL 18425

1991 WL 18425
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Diana GERSBACHER, Plaintiff,

v.

Robert LARSEN, Defendant.

No. 90 C 4692.
|
Feb. 5, 1991.

**Attorneys and Law Firms**

Mary Kay Thanos, Crown Point, Ind., for plaintiff.

James M. Dupree, Chicago, Ill., for defendant.

*MEMORANDUM OPINION*

ELAINE E. BUCKLO, United States Magistrate Judge.

***1** Diana Gersbacher, a resident of Indiana, has brought suit against Robert Larsen, a resident of Illinois, for injuries she sustained when she fell down a staircase in an apartment building Mr. Larsen owned. Jurisdiction is based upon diversity of citizenship. Ms. Gersbacher's attorney, Mary Kay Thanos, filed the complaint on August 13, 1990. On August 23, 1990, she sent Mr. Larsen a file-stamped copy of the complaint and summons by certified mail. Affidavit of Mary Kay Thanos (Ms. Gersbacher's attorney) ("Thanos Aff.") ¶ 5. The return receipt ("green card") came back to Ms. Thanos and was signed by Mr. Larsen. However, no appearance, answer or any other responsive pleading was filed on Mr. Larsen's behalf in this case. Consequently, Ms. Gersbacher moved for a default judgment on September 26, 1990 before Judge Bua. On September 27, 1990, Judge Bua conducted a hearing on damages and granted plaintiff's motion for default judgment, entering judgment against Mr. Larsen for $500,000.

Mr. Larsen claims that, although he received a certified letter from Ms. Thanos, it only contained a minute order which informed him of a status date in the case. Affidavit of Robert Larsen ("Larsen Aff.") ¶ 5. As a result, Mr. Larsen claims that he never received proper service of the summons and complaint, and moves to quash and vacate the judgment. This case has been assigned to me pursuant to the consent of the parties. Mr. Larsen's motion is granted.

As a general matter, the Seventh Circuit has a "well-established policy favoring a trial on the merits over a default judgment." *Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.,* 856 F.2d 873, 878 (7th Cir.1988). This is especially true when the judgment involves large sums of money as it does in this case. *Ellingsworth v. Chrysler,* 665 F.2d 180, 185 (7th Cir.1981); *In re Phoenix Realty Corp.,* Nos. 78 C 4117 and 78 C 4118 *slip. op.* (N.D.Ill., April 3, 1979) (available on LEXIS). However, a party seeking to vacate a default judgment must meet the requirements of Fed.R.Civ.P. 60(b) to be successful. Fed.R.Civ.P. 55(c).

Rule 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party by a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; .... (4) the judgment is void.

Fed.R.Civ.P. 60(b).

Mr. Larsen contends that the default judgment should be vacated because he was never properly served with the complaint. Improper service destroys a court's personal jurisdiction, making any judgment issued against the improperly served party void. *Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, Inc.,* 126 F.R.D. 48, 50 (N.D.Ill.1989). Thus, if Mr. Larsen was improperly served, the default judgment must be vacated pursuant to Rule 60(b)(4).

Ms. Gersbacher argues that the fact her attorney personally sent the summons and complaint to Mr. Larsen and the fact that he signed the green card and it was mailed back to her establishes that Mr. Larsen was served. I disagree. Ms. Gersbacher attempted to serve Mr. Larsen pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii) which provides that service may be had upon an individual:

***2** by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgement conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to sender.

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 4 of 20 PageID #:2532

**Gersbacher v. Larsen, Not Reported in F.Supp. (1991)**
1991 WL 18425

If no acknowledgement of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3).

Fed.R.Civ.P. 4(c)(2)(C)(ii)[1]

Accordingly, in order to have effectively served Mr. Larsen pursuant to this subsection, Ms. Gersbacher must have received a returned acknowledgement form within 20 days of mailing the summons and complaint. "[S]ervice under Fed.R.Civ.P. 4(c)(2)(C)(ii) is not effective without return of the acknowledgement form or another authorized method of service." *Dean v. K.I.S. Corp.,* 121 F.R.D. 74, 76 (N.D.Ill.1988).

Ms. Gersbacher has presented no evidence to show that Mr. Larsen signed and returned an acknowledgement form. Indeed, the form Ms. Gersbacher has attached to her motion in opposition to the motion to vacate and quash the default judgment was not executed by Mr. Larsen. Accordingly, when Ms. Gersbacher failed to receive an executed acknowledgement form after 20 days from the date she mailed the complaint, she had to serve Mr. Larsen by some other method of service authorized under the Rule. *Lewellen v. Morley,* 875 F.2d 118, 119 (7th Cir.1989). No evidence has been presented to show me that Ms. Gersbacher did so. Accordingly, the default judgment is void. Mr. Larsen's motion to vacate and quash the default judgment is therefore granted.[2]

**All Citations**

Not Reported in F.Supp., 1991 WL 18425

Footnotes

1   While the rule provides for first-class postage, certified mail does not make service under the rule improper when the acknowledgement forms are returned. *Lenoir v. Federal Deposit Ins. Corp.,* 709 F.Supp. 830, 832 (N.D.Ill.1989).

2   Mr. Larsen also raises excusable neglect (for his failure to receive proper service) and Ms. Gersbacher's misconduct (for delay in producing a timely copy of the green card after he requested it) as other grounds in support of his motion. I need not reach these issues in light of my disposition of this motion.

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

286 F.Supp.3d 982
United States District Court, W.D. Wisconsin.

LEXINGTON INSURANCE COMPANY, Plaintiff,

v.

ZURICH INSURANCE (TAIWAN) LTD. and Taian Insurance Co., Ltd., Defendants.

16–cv–740–jdp
|
Signed 12/21/2017

**Synopsis**
**Background:** Bicycle manufacturer's general liability insurer brought action seeking contribution from manufacturer's indirect insurers following settlement of personal injury action arising out of bicycle defect. Indirect insurers moved to dismiss for lack of personal jurisdiction.

**Holdings:** The District Court, James D. Peterson, J., held that:

indirect insurers did not purposefully avail themselves of the privilege of doing business in Wisconsin, as required to support specific personal jurisdiction, and

exercise of personal jurisdiction over the insurers would offend traditional notions of fair play and substantial justice.

Motions granted.

**Attorneys and Law Firms**

*984 Amy Julia Collins Cassidy, Amy P. Klie, Nicolaides Fink Thorpe Michaelides Sullivan LLP, Chicago, IL, for Plaintiff.

Brenden Leib, Samuel J. Leib, Leib Knott Gaynor LLC, Thomas R. Schrimpf, Hinshaw & Culbertson LLP, for Defendants.

OPINION & ORDER

JAMES D. PETERSON, District Judge

***1 This insurance dispute arises from an accident in Texas in which a Louisiana resident was seriously injured while riding a Trek bicycle. Plaintiff, Massachusetts-based Lexington Insurance Company, insured Wisconsin-based Trek Bicycle Corp. Lexington settled a lawsuit on Trek's behalf, and now it seeks contributions from defendants Zurich Insurance (Taiwan) Ltd. and Taian Insurance Co., Ltd. Zurich and Taian insured the manufacturers of some *985 of the components of the bicycle, and thus they are indirect insurers of Trek.

Zurich and Taian move to dismiss for lack of personal jurisdiction and for improper venue. Dkt. 13 and Dkt. 22. The evidence shows that Zurich and Taian had only attenuated contacts with Wisconsin, and the assertion of jurisdiction would not comport with constitutional due process. The court will grant Zurich's and Taian's motions to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. All other pending motions will be denied as moot.

FACTS

In deciding a motion to dismiss for lack of personal jurisdiction, the court may consider the well-pleaded allegations in the complaint, affidavits, and written materials. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015); *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). Here, the court draws the following facts from Lexington's complaint, affidavits from the parties, and relevant contracts. The court can decide the issue on written evidence without an evidentiary hearing because the material facts are not disputed. *See Abbott Labs., Inc. v. BioValve Techs, Inc.*, 543 F.Supp.2d 913, 918 (N.D. Ill. 2008) (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir.2002)).

Lexington is a Delaware company with its principal place of business in Massachusetts. Defendants Zurich and Taian are both insurance companies organized in the Republic of China (Taiwan).[1]

**A. The Texas lawsuit**
In 2012, Louisiana resident James Giessler rented a Trek mountain bike in Texas. The front wheel of the bike detached

from the bike's frame, and Giessler sustained permanent serious injuries. Giessler, his wife, and his son filed a lawsuit in Texas against Trek, Mellow Johnny's LLC (the business that rented the bike to Giessler), and SRAM, LLC, and Rock Shox (both manufacturers of the bike's component parts). On the eve of the trial, the case settled. Lexington, an insurer for Trek, indemnified Trek and paid the settlement.

Zurich and Taian were not parties to the Texas lawsuit. Zurich had insured the manufacturer of the bike, Giant Manufacturing Co., Ltd., a Taiwanese company. Taian had insured the manufacturer of the bike wheel, Hubtec International Ltd. a/k/a Formula Hubs, also a Taiwanese company. Neither Zurich nor Taian had insured Trek directly, but they both had extended insurance coverage to Trek by allowing Trek to be named as an additional insured under the policies issued to Giant and Formula Hubs. Lexington demanded that Zurich and Taian contribute to the cost of defending Trek and the settlement amount, but Zurich and Taian refused.

**B. Defendants' contacts with Wisconsin**

**\*\*2** Neither Zurich nor Taian does business in Wisconsin. The parties agree that for the purposes of this dispute, Zurich and Taian have no contact with Wisconsin other than the insurance policies that name Trek as an additional insured. The two insurance policies at issue were negotiated and signed in Taiwan. Lexington is a party to neither policy.

**1. Zurich Policy**

The first insurance policy (the Zurich Policy) is an agreement between Zurich and Giant. Dkt. 1–2. The policy includes **\*986** Giant's vendors as "[A]dditional Insured" and lists Trek as one of Giant's vendors. *Id.* at 4, 6.

Under the Zurich Policy, Zurich agreed to indemnify Giant and its vendors for "[c]ompensation resulting from judgments delivered by or obtained from a court of competent jurisdiction in the Geographical Limits" and "charges, expenses, and legal costs incurred or recoverable in the Geographical Limits." *Id.* at 12. The term "Geographical Limits" is defined as "the Geographical Limits stated in the Schedule," *id.* at 16, and the Schedule provides that the Geographical Limits is "worldwide," *id.* at 2.

The Zurich Policy also includes an arbitration clause. The clause provides,

> If any difference arises as to the amount to be paid under this Policy (liability being otherwise admitted) such difference will be referred to an arbitrator in accordance with the relevant statutory provisions in force at that time or, if there are no relevant statutory provisions in force, by agreement between Zurich and the Insured. Where any difference is by this Condition to be referred to arbitration the making of an award will be a condition to precedent to any right of action against Zurich.

*Id.* at 18. The Zurich Policy is governed by Taiwanese law. *Id.* at 12. The policy allows Zurich to control the litigation or settlement of any covered claim against an insured, but Zurich has no obligation to do so. *Id.* at 18.

**2. Taian Policy**

The second insurance policy at issue is an agreement between Taian and Formula Hubs (the Taian Policy). Dkt. 26–2 and Dkt. 26–4. Like the Zurich Policy, the Taian Policy's insurance coverage extends to Formula Hub's vendors. The Taian Policy as filed with the court does not include a list of Formula Hub's vendors, but such a list is contemplated. Dkt. 26–4, at 18. Taian sent Trek a certificate of insurance, and the certificate states that Trek is insured "in conjunction with" the Taian Policy. Dkt. 1–4, at 2. and Dkt. 26–2, at 1. The certificate includes a territorial limit, but the term "Territorial Limit" is defined as "Worldwide including USA/Canada." Dkt. 1–4 at 1.

Under the section titled "applicable law and jurisdiction," Taian and Formula Hub agreed to litigate their disputes applying "the law and practice" of Taiwanese courts:

> Each party agrees to submit to the jurisdiction of any court of competent jurisdiction within Taiwan and to comply with all requirements necessary to give such court jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court.

Dkt. 26–2, at 12. The policy gives Taian a right, but not an obligation, to control the litigation or settlement of any covered claim against an insured. *Id.* at 10.

ANALYSIS

**A. Motions to dismiss**

Zurich and Taian both contend that the court should dismiss the case for lack of personal jurisdiction under Rule 12(b)

(2) and for improper venue under Rule 12(b)(3). Zurich also contends that the service of process on Zurich was improper under Rule 12(b)(5). The court will dismiss the case for lack of personal jurisdiction, and thus it need not reach the venue and service issues.

**\*\*3** The personal jurisdiction analysis has two steps. First, the court determines whether the long-arm statute of the forum state, in this case Wisconsin, would reach the defendants. The Wisconsin statute must be construed "liberally in favor of the exercise of personal jurisdiction." **\*987** *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶¶ 16–17, 335 Wis. 2d 1, 13, 803 N.W.2d 623, 629. Second, the court must determine "whether the exercise of jurisdiction comports with due process requirements." *Id.* ¶ 16 (quoting *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 409, 629 N.W.2d 662, 667). "The plaintiff has a 'minimal burden' of showing that the statutory and constitutional requirements are met," and the court must resolve any "factual doubt" in favor of the plaintiff. *Id.* (quoting *Kopke*, 2001 WI 99, ¶ 8, 245 Wis.2d 396, 629 N.W.2d 662).

Neither Zurich nor Taian does business in Wisconsin, and Lexington concedes that they are not subject to general jurisdiction here. For their part, Zurich and Taian concede that their activities would satisfy Wisconsin's long-arm statute applicable to insurance actions, which applies to any action that arises from "a promise made anywhere to the plaintiff or some 3rd party," when the "person insured" was a Wisconsin resident "when the event out of which the cause of action is claimed to arise occurred." Wis. Stat. § 801.05(10). So the question here is whether the assertion of specific jurisdiction over defendants would comport with the due process requirements under the Constitution.

Three requirements must be satisfied: (1) the defendant must have sufficient minimum contacts with the forum; "(2) the alleged injury must have arisen from the defendant's forum-related activities"; and "(3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Lexington bears the burden on the first two requirements; Zurich and Taian have the burden on the third. *See Carlson v. Fid. Motor Grp., LLC*, 2015 WI App 16, ¶ 10, 360 Wis. 2d 369, 376, 860 N.W.2d 299, 302.

### 1. Minimum contacts
The minimum-contacts analysis varies depending on the nature of the claim. *Felland*, 682 F.3d at 674. "There is no 'pendent' or 'supplemental' theory of specific personal jurisdiction," so when a plaintiff asserts multiple claims, "personal jurisdiction over the defendant must be established as to each claim asserted." *MG Design Assocs., Corp. v. Costar Realty Info., Inc.*, 224 F.Supp.3d 621, 629 (N.D. Ill. 2016) (quoting *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F.Supp.3d 1040, 1048 (N.D. Ill. 2016)).

Lexington asserts five causes of action: (1) declaratory judgment that Zurich must pay Lexington under the Zurich Policy; (2) declaratory judgment that Taian must pay Lexington under the Taian Policy; (3) "Reimbursement / Contribution / Equitable Subrogation–Defense"; (4) "Reimbursement / Contribution / Equitable Subrogation–Indemnification"; and (5) unjust enrichment. Dkt. 1, ¶¶ 69–104. The first two are contract claims, as they ask the court to interpret the Zurich Policy and the Taian Policy. The contribution claims are tort claims, and the remainder of the claims arise under equity, although these claims are all closely related to the contract claims. Lexington does not attempt to assess jurisdiction for each of its claims separately but instead characterizes all the claims as contract claims for the minimum-contacts analysis. The court will follow suit. Lexington fares no better with tort or equitable claims, and Lexington has waived any argument that it would.

**\*\*4** In contract cases, the question is whether the defendant availed itself of "the privilege of conducting business in the forum state." *Felland*, 682 F.3d at 674. The court considers "only the 'dealings *between the parties in regard to the disputed contract*' that are relevant to minimum **\*988** contacts analysis.' " *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996)) (emphasis in original). For example, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Hyatt Int'l Corp.*, 302 F.3d at 716 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The court may also consider the parties' choice of law to see whether the defendant availed itself of the forum state's laws. *See Purdue Research Found.*, 338 F.3d at 786.

Here, Zurich and Taian have done none of the things that typically demonstrate purposeful availment of the privilege of

doing business in Wisconsin. Neither Zurich nor Taian does business or advertises in Wisconsin. Neither the Zurich Policy nor the Taian Policy mentions Wisconsin. Both policies are contracts between Taiwanese companies. Both were negotiated, drafted, and signed in Taiwan. Both insurance policies are governed by Taiwanese law. Trek did not participate in negotiating the policies; its only connection to these policies are through Giant and Formula Hubs, the Taiwanese companies insured by Zurich and Taian.

Nevertheless, Lexington contends that the court should find purposeful availment because (1) Zurich and Taian issued insurance policies containing worldwide coverage territory, showing that they contemplated being haled into a Wisconsin court; and (2) Zurich and Taian committed to ongoing obligations to Trek, a Wisconsin resident. The court will address each argument in turn.

a. Worldwide coverage

Lexington contends that the worldwide coverage territory extended under both policies establishes purposeful availment. None of the parties (or the court) found Seventh Circuit precedent directly on point. Lexington relies on non-binding cases that have found purposeful availment when the forum state is within the coverage territory, such as *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 721 (D.C. Cir. 1986) and *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 791 (8th Cir. 2005). These cases reason that an insurer defendant has purposefully availed itself of the benefit of each forum for which it has extended coverage. A thorough explanation of this reasoning is in *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282 (10th Cir. 2007). But the view is not universally accepted, particularly when the insurance contract does not obligate the insurer to defend lawsuits in the forum. *See*, *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 580 n. 10 (9th Cir. 2011); *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 138 N.J. 106, 118, 128, 649 A.2d 379, 385, 389 (1994). Still, Lexington has some persuasive authority on its side.

Against the authorities cited by Lexington, Zurich relies chiefly on the jurisdictional principles in *Walden v. Fiore*, ––– U.S. ––––, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). In *Walden*, the Supreme Court reiterated that the "minimal contacts" threshold requires that a defendant direct its activities to the forum itself, not merely to forum residents. *Id.* at 1122. *Walden* was a tort case involving a *Bivens* claim against a Georgia law enforcement officer who seized cash from Nevada residents when they were traveling through Atlanta. *Id.* at 1119. Although the officer knew that the travelers were from Nevada, and thus he knew that the harm of the seizure would be felt there, the Court held that **\*989** this was not a constitutionally sufficient minimum contact with Nevada. *Id.* at 1125. In overruling the lower court decision, the Court said that the lower court's analysis "obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself." *Id.* Zurich questions whether *TH Agric. & Nutrition* would still stand after *Walden*. Although it is not manifestly clear how various principles in *Walden* would apply in a contract case, it is now decided that the " 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself." *Id.* at 1122; *accord Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 915 (7th Cir. 2015) (applying *Walden* to a contract claim).

**\*\*5** The grant of worldwide coverage to Giant and Formula Hubs does not entail any action directed specifically at Wisconsin. It demonstrates awareness on the part of Zurich and Taian that they might be called upon to cover Giants' or Formula Hubs' liability for accidents that occur anywhere in the world, including Wisconsin. But "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). And whether a covered accident actually occurs in Wisconsin will be the result of actions by several other parties: the insureds, Giant and Taian, decide to sell components to certain companies; those companies, like Trek, will decide where to sell their bicycles; and Trek's customers will decide where to buy and ride them. At least in terms of the coverage territory, Giant and Formula Hubs will have contacts with Wisconsin based only on the actions of multiple third parties. Thus, in this case defendants' contacts with the forum state are even more attenuated than those in *World–Wide Volkswagen Corp.*, which were contacts made by third parties and not sufficient minimum contacts to establish personal jurisdiction.

Lexington argues that Zurich and Taian imposed higher deductibles based on geography, reflecting a deliberate assessment of the risks related to worldwide coverage. Dkt. 27, at 18; Dkt. 33, at 15. The Zurich Policy imposes higher deductibles for claims arising outside China or Taiwan, Dkt. 1–2, at 2, and the Taian Policy has higher deductibles for claims arising from the United States or Canada, Dkt. 26–2, at 2. But Lexington's argument on this point is undeveloped and

not persuasive. Lexington does not explain how the higher deductible applicable to all claims arising in the United States and Canada reflects any intention by Zurich or Taian to avail themselves of the benefits and protections of *Wisconsin*. And without this explanation, Lexington cannot show that Zurich or Taian reasonably anticipated being haled into court in Wisconsin.

Quite to the contrary, the insurance contracts show that Zurich and Taian intended to avoid litigation in foreign states. Both policies include forum-selection clauses intended to foreclose such litigation. Zurich chose arbitration, Dkt. 1–2, at 18, and Taian chose Taiwanese courts, Dkt. 26–2, at 12. Even if these forum-selection clauses were ultimately unenforceable, as Lexington contends, they demonstrate that both Zurich and Taian expected that they would not be litigating cases in Wisconsin. The reasoning of the Tenth Circuit is informative and applicable here:

> An insurance company who issues a policy in which it agrees to defend its insured in a certain forum can undoubtedly foresee that it may have to provide a defense for its insured who is haled into court there. It does not follow, however, that by agreeing to defend in the forum, that the insurance company also by implication agrees that it will litigate disputes **\*990** between it and its insured regarding the terms of an insurance contract in a foreign forum. While it is reasonably foreseeable that an insured would be involved in litigation with a third-party in another forum, it is not necessarily foreseeable that a dispute between the insured and the insurer over an insurance contract prepared, negotiated, and executed pursuant to Canadian law in Canada with a Canadian company would be litigated in a foreign forum where neither party has any contacts.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998). Zurich and Taian might expect to provide coverage for accidents that occur in Wisconsin, but it would not follow that they would expect to defend disputes over coverage in Wisconsin, which is what Lexington contends here. Zurich and Taian do not have sufficient minimum contacts to support jurisdiction based on the worldwide coverage territory extended to their insureds.

One last point: even if worldwide coverage territory were sufficient, it would be barely so. As the court explained in *TH Agric. & Nutrition*, sufficient minimum contacts established by the territory of insurance coverage are qualitatively weak, and thus would require defendants to make a lesser showing on the fairness prong of the analysis. 488 F.3d at 1292.

### b. Ongoing obligations to a Wisconsin resident

**\*\*6** Lexington contends that because Zurich and Taian included Trek as an additional insured under their policies, they undertook continuing obligations to a Wisconsin resident. Indeed, there are many cases holding that an insurer who sells insurance to forum residents is amenable to personal jurisdiction in the forum. This is an extension of the principle that jurisdiction is proper "where business activities reach out beyond one state and create continuing relationships and obligations with citizens of another state." *Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); *accord Burger King Corp.*, 471 U.S. at 475–76, 105 S.Ct. 2174.

But Zurich and Taian did not reach out to Wisconsin residents and offer to sell them insurance coverage. Trek, the only Wisconsin resident at issue, was insured by defendants only because Giant and Formula Hubs sold bicycle components to Trek, and defendants approved the inclusion of Trek as an additional insured. As an additional insured under those policies, Trek did not have general coverage for Trek products, but only coverage for Trek's liability that might arise from components supplied by Giant and Formula Hubs. The Taian certificate of insurance issued to Trek does not alter the Taian Policy:

> This certificate is issued as a matter of information only. This certificate does not amend, extend or alter the coverage afforded by the polices above, and all coverage terms and conditions follow the original wordings to be issued.

Dkt. 1–4, at 2. Thus, Zurich's and Taian's obligation to Trek is contingent and probabilistic, arising only when there is a claim related to components supplied by Giant or Formula Hubs. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.' " *Walden*, 134 S.Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Lexington does not allege or adduce evidence that its claims arise from the components supplied by Giant or Formula Hubs. Nor did Giessler during the Texas lawsuit; Giant **\*991** and Formula Hubs were not parties in that case.

Lexington relies on two decisions to support its argument that naming Trek as an additional insured is tantamount to selling insurance to Trek, and thus a sufficient basis for personal jurisdiction: *Ridemind, LLC v. S. China Ins. Co.*, No. 14-cv-489, 2014 WL 2573310, at *1 (W.D. Wash. June 9, 2014); *Chace v. Dorcy Internatl., Inc.*, 68 Ohio App. 3d 99, 109, 587 N.E.2d 442, 448 (1991). These cases are of course not binding, although defendants have not cited any directly contrary authority dealing with jurisdiction on the basis of an "additional insured" relationship. But defendants are correct that neither of these cases considered *Walden*, which expresses a much narrower view of personal jurisdiction. After *Walden*, the Taian certificate, which is "purely informational" on its face and only "incidental" to an existing contract, does not confer personal jurisdiction. See *Philos Techs.*, 802 F.3d at 915. And the existence of a contract with a forum resident is not, in itself, a sufficient minimum contact for jurisdictional purposes. *Id.* at 913 ("Standing alone, the fact that a foreign party has formed a contract with an in-state party is often insufficient to supply the minimum contacts required by the Constitution." (citing *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174)).

Defendants' connection to Wisconsin is truly attenuated, even in light of their consent to including Trek as an additional insured on the Taiwanese contracts. Zurich and Taian did not purposefully avail themselves of the privilege of doing business in Wisconsin, and they lacked sufficient minimum contacts with Wisconsin. And because Zurich and Taian had no activity related to Wisconsin, Lexington's injury did not arise from any forum-related activity.

**2. Traditional notions of fair play and substantial justice**

**\*\*7** Even if Zurich and Taian had sufficient minimum contacts, and the case arose from forum-related activities, the court cannot exercise personal jurisdiction over a defendant if doing so would offend traditional notions of fair play and substantial justice. See *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). To assess whether exercising personal jurisdiction comports to traditional notions of fair play and substantial justice, the court may consider five factors: (1) "the burden on the defendant"; (2) "the forum state's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several [s]tates in furthering fundamental substantive social policies." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010).

The first factor, the burdens on Zurich and Taian, tips against exercising personal jurisdiction. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight." *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Here, both Zurich and Taian are Taiwanese companies. They maintain no office and employ no agent in Wisconsin. Zurich and Taian must expend considerable resources to litigate in a foreign legal system.

The second factor, Wisconsin's interest in adjudicating the dispute, tips against exercising personal jurisdiction. Trek, the only Wisconsin resident, is not a party to this case. And Lexington does not argue that Wisconsin law should apply. Instead, **\*992** Lexington contends that Wisconsin has an interest in adjudicating this case because Lexington's claim "serves a policing purpose, ensuring that a foreign insurer cannot simply ignore its coverage obligations to a Wisconsin insured." Dkt. 27, at 23. As discussed above, defendants did not directly insure Trek, so Wisconsin's interest in regulating the insurers of a Wisconsin resident is diffuse here. And this kind of "overly broad" interest has been rejected. See *Asahi Metal Indus.*, 480 U.S. at 114, 107 S.Ct. 1026 (rejecting the argument that California has an interest in "protecting its consumers by ensuring that foreign manufacturers comply with the state's safety standards."). Thus, Wisconsin has no significant interest in adjudicating this case.

The third factor, Lexington's interest in obtaining convenient and effective relief, tips somewhat in favor of personal jurisdiction. Just as Zurich and Taian have the burdens of litigating here in a legal system foreign to them, Lexington will face similar burdens if it litigates in Taiwan. But Lexington is not seeking to litigate in its home forum, so this factor weighs only slightly in Lexington's favor.

The fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, tips against exercising personal jurisdiction. Lexington concedes that "[t]his lawsuit turns on the construction of insurance policies." Dkt. 27, at 24.[2] Both the Zurich Policy and the Taian Policy are governed by Taiwanese law. So the court cannot resolve Lexington's claims without applying Taiwanese law, and therefore the arbitrators and judges in Taiwan are better suited to address Lexington's claims. The witnesses who can testify as to the contracting parties' dealings and the

manufacturing process of the bicycle parts are in Taiwan. Perhaps some witnesses who can testify about the bicycle accident are in Texas. But given Lexington's position that its claims turn on the construction of the insurance policies, any testimony of a witness in the United States is ancillary to this case. The most efficient way to resolve this case is through adjudication in Taiwan.

**\*\*8** The fifth factor, the shared interest of nations, tips against personal jurisdiction. As the Supreme Court has explained, "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus.*, 480 U.S. at 115, 107 S.Ct. 1026. The nations' shared interest is "best served by ... an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.* Because Wisconsin has a minimal interest as noted above, the court concludes that the fifth factor, too, tips against exercising personal jurisdiction.

On balance, the only factor that tips in favor of exercising personal jurisdiction is the third factor, Lexington's interest. All other factors tip against exercising personal jurisdiction. The court concludes that exercising personal jurisdiction over Zurich and Taian would clearly offend traditional notions of fair play and substantial justice.

**\*993** The court will grant Zurich's and Taian's motions to dismiss for lack of personal jurisdiction. The court need not reach other issues raised by the parties, such as those pertaining to venue and service.

**B. Other motions**

The parties have filed numerous motions pertaining to the arbitration proceedings between Zurich and Lexington.[3] These motions all pertain to Lexington's efforts to enjoin Zurich from arbitrating its disputes with Lexington. After Lexington filed its complaint, Zurich commenced an arbitration proceeding against Lexington in Taiwan. Lexington then moved for a preliminary injunction to enjoin Zurich from arbitrating. Before the court issued an order ruling on Lexington's motion for a preliminary injunction, the arbitral tribunal ruled against Lexington, reasoning that Lexington's claims are time-barred under Taiwanese law. Dkt. 53, ¶ 12. Lexington now seeks a declaratory judgment that Lexington had no obligation to arbitrate and that the arbitration clause is unenforceable against Lexington. Dkt. 54–1, ¶¶ 123–136. The court will deny these motions.

The court lacks personal jurisdiction over Zurich, so the court cannot grant injunctive relief against it. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the defendant."). And the court will dismiss this case, so all pending motions are moot.

One last point about Lexington's resistance to arbitration. The subtext in Lexington's numerous submissions is clear: the court should hurry up and decide Lexington's motions and enjoin Zurich from arbitrating. But Lexington's request for an injunction is an extreme long shot. As the Seventh Circuit has made clear,

> Where's the irreparable injury? If AT & T loses in the arbitration, the union will seek to enforce its victory; AT & T can defend on the theory that it had not agreed to arbitrate this kind of dispute. Delay would not cause irreparable injury, so there is no justification for an injunction. All AT & T could lose from the delay is the cost of presenting the arguments to the arbitrator, and it has long been established that the expense of adjudication is not irreparable injury.... So fundamental is this principle that we have held it sanctionably frivolous to seek an anti-arbitration injunction.

**\*\*9** *AT & T Broadband, LLC v. Int'l Bhd. of Elec. Workers*, 317 F.3d 758, 762 (7th Cir. 2003) (collecting cases); *accord Sherwood v. Marquette Transp. Co., LLC*, 587 F.3d 841, 845 (7th Cir. 2009). It might not be literally impossible to get an injunction to forestall an arbitration. But this case —in which Lexington seeks compensation for a completed personal injury litigation—doesn't seem like the case in which the court should depart from its well-established approach to the topic.

**\*994** ORDER

IT IS ORDERED that:

1. Defendant Zurich Insurance (Taiwan) Ltd.'s motion's to amend the case caption, Dkt. 44, is GRANTED. The clerk of court is directed to substitute Zurich Insurance (Taiwan) Ltd. with defendant Hotai Insurance Co., Ltd.

2. Defendant Hotai Insurance Co., Ltd.'s motion to dismiss, Dkt. 13, is GRANTED.

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 12 of 20 PageID #:2540

Lexington Insurance Company v. Zurich Insurance (Taiwan) Ltd., 286 F.Supp.3d 982...

2017 WL 6550480

3. Defendant Taian Insurance Co., Ltd.'s motion to dismiss, Dkt. 22, is GRANTED.

4. All other motions are DENIED.

5. This case is DISMISSED.

6. The clerk of court is directed to enter judgment in favor of defendants Hotai Insurance Co., Ltd. and Taian Insurance Co., Ltd. and close the case.

**All Citations**

286 F.Supp.3d 982, 2017 WL 6550480

Footnotes

1    Zurich has changed its name to Hotai Insurance Co. Ltd. and moved to amend the case caption to reflect its new name. Dkt. 44, at 2. But all relevant documents and the parties' briefs refer to Hotai by its old name, so the court will use its old name for clarity.

2    Contribution claims require Lexington to show that Zurich and Taian are "liable for the same obligation" as Lexington, so the court must look to the Zurich Policy and the Taian Policy. *Kafka v. Pope*, 194 Wis. 2d 234, 243, 533 N.W.2d 491 (1995). Likewise, the reimbursement claims require Lexington to show that Zurich and Taian breached their insurance contracts with Trek. See *Fabco Equip., Inc. v. Kreilkamp Trucking, Inc.*, 2013 WI App 141, ¶ 15, 352 Wis. 2d 106, 841 N.W.2d 542. As for the unjust enrichment claims, Lexington's theory is that Zurich and Taian were unjustly enriched because they did not pay for Trek's defense despite their obligations under their insurance policies. Dkt. ¶¶ 97–98.

3    *See* Dkt. 35 (Lexington's motion to amend complaint seeking declarations that Lexington need not arbitrate); Dkt. 36 (Lexington's motion for preliminary injunction to enjoin Zurich from pursuing arbitration); Dkt. 43 (Lexington's motion for reconsideration on the court's order to stay briefing on motion for preliminary injunction); Dkt. 46 (Lexington's motion for leave to file reply for motion for reconsideration); Dkt. 48 (Lexington's motion for leave to file notice of factual development about the ongoing arbitration); Dkt. 54 (Lexington's motion for leave to file amended complaint); Dkt. 55 (Zurich's motion to stay briefing on motion for leave to file amended complaint); Dkt. 56 (Taian's motion to stay briefing on motion for leave to file amended complaint).

---

**End of Document**                                                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 13 of 20 PageID #:2541

Shrum v. Big Lots Stores, Inc., Not Reported in Fed. Supp. (2014)

2014 WL 6888446

2014 WL 6888446
Only the Westlaw citation is currently available.
United States District Court, C.D. Illinois,
Urbana Division.

Mackenzie SHRUM, Plaintiff,

v.

BIG LOTS STORES, INC., Lohia Group of Industries a/k/a Lohia Business Group a/k/a Lohia Group, Designco Overseas Private Limited a/k/a Designco India a/k/a Designco, and Bureau Veritas Consumer Products Services, Inc., Defendants.

Case No. 3:14–cv–03135–CSB–DGB
|
Signed December 8, 2014

**Attorneys and Law Firms**

[James P. Ginzkey](), Ginzkey Law Office, Bloomington, IL, for Plaintiff.

[Edward P. Gibbons](), [Kyle Taylor Geiger](), Walker Wilcox Matousek LLP, Chicago, IL, [Alexander Bogdan](), [Theodore V.H. Mayer](), [Eric Blumenfeld](), Hughes Hubbard & Reed LLP, New York, NY, [John E. Thies](), [Kara J. Wade](), Webber & Thies PC, Urbana, IL, for Defendants.

*OPINION*

[COLIN S. BRUCE](), U.S. DISTRICT JUDGE

 *1  This case is before the court for ruling on the Motion to Dismiss Plaintiff's Amended Complaint (# 6) filed by defendant Bureau Veritas Consumer Products Services, Inc. (BVCPS). This court has carefully considered the arguments of and the documents provided by the parties. Following this careful and thorough review, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (# 6) is GRANTED.

FACTS

This is a products-liability case. Mackenzie Shrum (Plaintiff), a minor, filed a Complaint (# 1) on May 6, 2014,[1] alleging that, on May 18, 2013, a Mosaic Glass Tabletop Torch (torch) that her father, Jarrod Shrum, bought along with citronella fuel from defendant Big Lots exploded when she tried to extinguish its flame by blowing on the wick, covering her with burning fuel and causing her to suffer third degree burns to forty percent of her body.

Plaintiff states that defendants Lohia Group of Industries and Designco Overseas Private Limited (together, Designco) designed, manufactured, labeled, supplied, and distributed the torch, while Big Lots purchased for resale, labeled, marketed, distributed, and sold the torch. Plaintiff only alleges that BVCPS tested the torch for safety and compliance prior to its labeling, marketing, importation, distribution, sale, and resale. Plaintiff is asserting the following causes of action against Designco, Big Lots, and BVCPS: (1) strict products liability, design defect; (2) strict products liability, manufacturing defect; (3) strict products liability, marketing defect; and (4) negligence. Plaintiff is also asserting a cause of action against Designco and Big Lots for breach of implied warranty.

Plaintiff is a resident and citizen of Illinois. Big Lots is an Ohio corporation that has its headquarters and principal place of business in Ohio. Lohia Group of Industries and Designco Overseas Private Limited are India corporations that have their principal place of business in India. BVCPS is a Massachusetts corporation that has its headquarters and principal place of business in New York. This court sits in diversity.

BVCPS has over 100 offices and laboratories around the world and a presence in every major sourcing and selling territory. It performs product inspection, product certification, and factory assessment services, but its main business is the laboratory testing of pre-production samples of consumer products to client-specified standards. BVCPS' primary laboratory is in New York, but it has a second laboratory in Massachusetts.

BVCPS filed a Motion to Dismiss (# 6) pursuant to [Federal Rule of Civil Procedure 12(b)(2)](), a Brief in Support (# 7), and an Affidavit in Support (# 9) on July 7, 2014. On September 10, 2014, Plaintiff filed a Response to Motion to Dismiss (# 26) and Memorandum in Opposition to Motion to Dismiss (# 27), with attached exhibits. On September 17, 2014, BVCPS filed a Motion for Leave to Reply to Plaintiff's Opposition

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 14 of 20 PageID #:2542
Shrum v. Big Lots Stores, Inc., Not Reported in Fed. Supp. (2014)
2014 WL 6888446

to Motion to Dismiss (# 28) and Brief in Support (# 29), followed by a Reply in Further Support of Motion to Dismiss (# 30) on September 29, 2014. Plaintiff then filed a Motion for Leave to File Surresponse (# 31) on October 8, 2014, and a Surresponse to Motion to Dismiss (# 33) on October 31, 2014. An evidentiary hearing has not been held. Instead, both parties have submitted affidavits supporting their positions.

BVCPS' Contacts with Illinois

**\*2** BVCPS has numerous contacts with Illinois. In determining BVCPS' contacts, this court will accept as true BVCPS' uncontested assertions relating to those contacts and draw all inferences in Plaintiff's favor if BVCPS contests relevant facts. *N. Grain Mktg.,* 743 F.3d at 491 (citations omitted); *Cent. States,* 440 F.3d at 878; *Crawley,* 2006 WL 2331143, at \*1 (citations omitted).

BVCPS has the following contacts with Illinois:

1. BVCPS tests products manufactured in Illinois. The torch, however, was not manufactured in Illinois.

2. BVCPS maintains a registered agent in Illinois for the service of process.

3. BVCPS inspects products in Illinois. In 2013, BVCPS conducted 0.98% of all the inspections it performed in Illinois. During the first seven months of 2014, it conducted 0.39% of all of the inspections it performed in Illinois.

4. BVCPS performs factory assessments in Illinois. In 2013, BVCPS performed 1.41% of all the assessments it conducted in Illinois. During the first seven months of 2014, it performed 3.33% of all of the assessments it conducted in Illinois.

5. BVCPS filed Form BCA 13.15—an application to transact business in Illinois—with the Illinois Secretary of State, although it could have filed Form BCA 4.25, which specifically states that a foreign corporation is "not transacting business in the State of Illinois at this time."

6. BVCPS employs several Illinois residents. As of the first quarter of 2013, BVCPS had three Illinois employees who were collectively paid approximately $423,000. The three employees were an account manager who left BVCPS for another job in July 2013, BVCPS' president and director who has been stationed overseas for more than five years, and an information systems technician who does not interact with BVCPS' clients. As of the first quarter of 2014, BVCPS had two employees in Illinois who were collectively paid approximately $343,000. The decrease in employees and gross payroll expenses is the result of the account manager leaving for other employment.

7. In the process of pursuing new clients, BVCPS solicits business in Illinois. Illinois clients generated 5.2% of BVCPS' total revenue in 2013 and 4.1% of BVCPS' total revenue for the first five months of 2014.

8. Big Lots has designated BVCPS as its testing provider and imposes on it estimated testing turnaround times.

9. The Massachusetts Secretary of the Commonwealth has on file a UCC Form 1 stating that a secured party claims a security interest in imaging equipment used by BVCPS in Downers Grove, Illinois.

10. BVCPS is identified as doing business on several public websites that are accessible in Illinois. On one website, BVCPS has a brochure containing a world map identifying an office in Chicago, Illinois.

11. While Plaintiff claims, Big Lots admits, and BVCPS denies it, this court will assume that BVCPS tested the type of torch in question.

ANALYSIS

BVCPS' argues that it should be dismissed from the case because this court lacks personal jurisdiction over it. Plaintiff disagrees.

I. STANDARD

Motion to Dismiss

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure challenges whether it is consistent with due process for a court to assert personal jurisdiction over a defendant. *See* Fed.R.Civ.P. 12(b)(2). A complaint does not need to include facts demonstrating personal jurisdiction; however, when a defendant challenges personal jurisdiction, the plaintiff bears the burden of proving that it exists. *Purdue*

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 15 of 20 PageID #:2543

Shrum v. Big Lots Stores, Inc., Not Reported in Fed. Supp. (2014)
2014 WL 6888446

*Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir.2003) (citations omitted). Where, as here, a determination of jurisdiction is based on the submission of written materials instead of an evidentiary hearing, a plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* (citations and internal quotation marks omitted); *see also N. Grain Mktg., LLC v. Greving,* 743 F.3d 487, 491 (7th Cir.2014). In determining whether the plaintiff has satisfied this standard, a court must resolve all relevant factual disputes in the plaintiff's favor and "read the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff. *N. Grain Mktg.,* 743 F.3d at 491 (citations omitted); *Cent. States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.,* 440 F.3d 870, 878 (7th Cir.2006) (citations and internal quotation marks omitted). A court may, however, "accept as true those facts presented in defendant's affidavit that remain uncontested." *Crawley v. Mariott Hotels, Inc.,* No. 05–CV–05805, 2006 WL 2331143, at *1 (N.D.Ill. Aug. 10, 2006) (citing *Purdue,* 338 F.3d at 783; *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1275 (7th Cir.1997)).

Personal Jurisdiction

 *3 In a diversity-jurisdiction case such as this, a court will have personal jurisdiction over a defendant if the plaintiff files a waiver of service or serves summons on a defendant and "the defendant is subject to the jurisdiction of a court ... in the state where the district court is located—here, Illinois." *N. Grain Mktg.,* 743 F.3d at 491 (citing Fed.R.Civ.P. 4(k)(1)(A)). In this case, service is not at issue. However, BVCPS claims that it would not be subject to the jurisdiction of Illinois courts.

In order to determine whether BVCPS would be subject to the jurisdiction of Illinois courts, this court must first turn to Illinois' long-arm statute. The Illinois long-arm statute permits its courts to exercise jurisdiction for any reason permitted by the Illinois and United States Constitutions. 735 Ill. Comp. Stat. 5/2–209 (a)(2), (b)(4), (c) (West 2014). Because of this, the due process requirements and the Illinois long-arm statute are coextensive. *Madison Miracle Prods., LLC v. MGM Distribution Co.,* 978 N.E.2d 654, 668 (Ill.App.Ct.2012). Therefore, Illinois' long-arm statute will be satisfied when due process concerns are satisfied. *Id.*

The Illinois and Federal Constitutions' due process guarantees "are not necessarily coextensive." *KM Enters., Inc. v. Global Traffic Techs., Inc.,* 725 F.3d 718, 732 (7th Cir.2013). To the extent that the tests diverge, "the Illinois constitutional standard is likely more restrictive than its federal counterpart." *Id.* Consequently, if a defendant is not subject to personal jurisdiction under the federal constitutional standard, a court "need not worry whether jurisdiction is also proper under the Illinois Constitution." *Id.* Accordingly, this court will base its determination of jurisdiction on whether exercising personal jurisdiction over BVCPS comports with federal due process requirements.[2]

Under the federal due process requirements, personal jurisdiction may be exercised if the court has either general or specific personal jurisdiction. *Id.* General jurisdiction requires that a defendant's contacts with a forum state be sufficiently " 'continuous and systematic' as to render [them] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011) (citations omitted); *N. Grain Mktg.,* 743 F.3d at 492 (citations omitted); *see also Daimler AG v. Bauman,* 134 S.Ct. 746, 751 (2014). "Specific jurisdiction requires that the plaintiff's cause of action relate [directly] to the defendant's contact with the forum." *KM Enters.,* 725 F.3d at 732–33 (citations omitted); *see also N. Grain Mktg.,* 743 F.3d at 492 (citations omitted).

 *4 In order for this court to have personal jurisdiction over BVCPS, it must conclude that either specific or general jurisdiction exists. Such jurisdiction must be "determined as of the date of the filing of the suit." *Wild v. Subscription Plus, Inc.,* 292 F.3d 526, 528 (7th Cir.2002); *see Cent. States,* 440 F.3d at 877.

III. SPECIFIC JURISDICTION

Plaintiff asserts that this court has specific jurisdiction over BVCPS because BVCPS committed a tortious act within Illinois, since the state in which Plaintiff's injury occurred is the state in which the tort occurred. BVCPS, however, maintains that this court lacks specific jurisdiction because Plaintiff's claims against BVCPS do not arise from BVCPS' contacts with Illinois and the Seventh Circuit has abrogated the line of cases upon which Plaintiff relies. This court agrees with BVCPS.

In determining whether there are sufficient minimum contacts to create specific jurisdiction, courts "focus[ ] on 'the relationship among the defendant, the forum, and the litigation.' " *Walden v. Fiore,* 134 S.Ct. 1115, 1121 (2014)

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 16 of 20 PageID #:2544

Shrum v. Big Lots Stores, Inc., Not Reported in Fed. Supp. (2014)
2014 WL 6888446

(quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984)). "Specific jurisdiction requires that the plaintiff's cause of action relate [directly] to the defendant's contact with the forum." *KM Enters.,* 725 F.3d at 732–33 (citations omitted); *see also N. Grain Mktg.,* 743 F.3d at 492 (citations omitted). Such jurisdiction exists if: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg.,* 743 F.3d at 492 (quoting *Tamburo,* 601 F.3d at 702) (internal quotation marks omitted). Nonetheless, a court's exercise of specific jurisdiction cannot violate "traditional notions of fair play and substantial justice." *Id.* (citing *Tamburo,* 601 F.3d at 702). That is, the minimum contacts must "make personal jurisdiction reasonable and fair under the circumstances." *RAR,* 107 F.3d at 1277.

A. *BVCPS Has No Claims–Related Contacts With Illinois.*
While BVCPS maintains multiple contacts with Illinois, none of those contacts are related to Plaintiff's claims. A defendant's contacts with a forum state are not all relevant to determining whether a plaintiff's claims relate to or arise out of a defendant's contacts; only those contacts that "bear on the substantive legal dispute between the parties or relate to the operative facts of the case" are relevant. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1024 (7th Cir.2009); *see also uBid, Inc. v. GoDaddy Group, Inc.,* 623 F.3d 421, 429 (7th Cir.2010); *RAR,* 107 F.3d at 1277–78. Thus, the plaintiff's cause of action "must *directly arise* out of the specific contacts between the defendant and the forum state." *GCIU,* 565 F.3d at 1024 (emphasis in original) (citation and internal quotation marks omitted).

Despite the laundry list of contacts that BVCPS maintains with Illinois, no contact is relevant to Plaintiff's claims. Plaintiff admits that BVCPS had no involvement in the labeling, marketing, distribution, sale, and resale of any torch. Therefore, BVCPS' alleged tortious actions would be in its testing of the torch and its communications of the results with its co-defendants, making only those contacts associated with those actions relevant.

**\*5** First, BVCPS' assertion that no communications over any testing on the torch occurred in Illinois is uncontroverted and must therefore be taken as true. As for the testing, Plaintiff's claim that BVCPS tested the type of torch in question must be taken as true. However, that does not create a contact with Illinois because, as Plaintiff concedes, that testing occurred outside of the United States prior to any torch's importation. And BVCPS' assertions that it never tested the particular torch injuring Plaintiff and that none of BVCPS' employees residing in Illinois were involved in any testing are uncontroverted and must be taken as true. Accordingly, no claims-related conduct connects BVCPS to Illinois.

B. *BVCPS Has Not Purposefully Directed Its Activities At or Purposefully Availed Itself of the Privilege of Conducting Business in Illinois.*
Even if, in testing the torch, BVCPS had contacts with Illinois, BVCPS did not purposefully direct its suit-related conduct to Illinois or purposefully avail itself of the privilege of conducting business in Illinois. Due process requires that a "defendant's suit-related conduct" create a sufficiently "substantial connection with the forum State" that it is "reasonable for the defendant to anticipate that he could be haled into court there." *Walden,* 134 S.Ct. at 1121; *N. Grain Mktg.,* 743 F.3d at 492 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)). For there to be a "substantial connection," the relationship between the defendant and the forum State "must arise out of contacts that the defendant *himself* creates." *Walden,* 134 S.Ct. at 1122 (emphasis in original) (quoting *Burger King,* 471 U.S. at 475) (internal quotation marks omitted). Accordingly, contacts between a forum state and a third party or plaintiff—no matter how significant—cannot satisfy minimum contacts. *Walden,* 134 S.Ct. at 1122 (quoting *Rush v. Savchuk,* 444 U.S. 320, 332 (1980)); *see Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 417 (1984); *World–Wide Volkswagen Corp.,* 444 U.S. 286, 298 (1980); *Hanson v. Denckla,* 357 U.S. 235, 253–54 (1958).

Moreover, " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen,* 444 U.S. at 295. In products liability cases, "it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice,' " and, "as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre Mach., Ltd. v. Nicastro,* 131 S.Ct. 2780, 2787–88 (2011). When, as in *World Wide Volkswagen,* products end up in a state due to "the 'unilateral activity' of a third party, rather than the defendant's distribution scheme," the scenario will doom the plaintiff's case. *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 551 (7th Cir.2004) (citations omitted).

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 17 of 20 PageID #:2545

**Shrum v. Big Lots Stores, Inc.,** Not Reported in Fed. Supp. (2014)
2014 WL 6888446

Here, BVCPS did not test the torches in Illinois. And BVCPS had no control over where, or even if, the torches would be distributed or sold because it was not involved in the torch's labeling, marketing, distribution, sale, or resale. Rather, the torch in question was in Illinois because Designco and Big Lots distributed it to Illinois and Big Lots sold it there. Consequently, the torches' presence in Illinois was entirely the result of the unilateral actions of third parties. And, even if BVCPS knew that the torches would be distributed and sold, it would be difficult for it to foresee that the torches would end up in Illinois, as opposed to any other state or even another nation, because Designco is a large, foreign export company and Big Lots is a multinational corporation with stores nationwide. Further, there is no indication that BVCPS tested the torches to meet any Illinois-specific standards. In any event, foreseeability was foreclosed because BVCPS did not know that the torches would even be sold or distributed. Accordingly, BVCPS did not purposefully direct its suit-related conduct to Illinois or purposefully avail itself of the privilege of conducting business in Illinois.

*C. Plaintiff's Injury in Illinois Cannot Confer Jurisdiction.*

**\*6** This court is also not persuaded by Plaintiff's claim that it has jurisdiction over BVCPS because BVCPS performed a tortious act or omission that injured Plaintiff in Illinois. Specific jurisdiction's guiding principles apply even in the case of a tortfeasor. *Walden,* 134 S.Ct. at 1123; *Wallace,* 778 F.2d at 395; *Kellogg Brown,* 2014 WL 4948136, at \*5 (citing *Medallion Prods.,* 2007 WL 3085913, at \*6) ("The effects of an alleged tort are part of, not a substitute for, the analysis of a defendant's minimum contacts with the forum."). As the Supreme Court unanimously held in *Walden v. Fiore,* the basis for jurisdiction is a defendant's intentional conduct that creates requisite contacts with the forum state. 134 S.Ct. at 1123 (citations omitted). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125. And, when the Seventh Circuit addressed the question of "whether harming a plaintiff in the forum state creates sufficient minimum contacts," the court held that "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 802 (7th Cir.2014) (citations omitted). In other words, "[e]xperiencing the effects of an injury in a forum on its own is insufficient under a tort theory absent 'something more directed at that [jurisdiction].'" *Kellogg Brown,* 2014 WL 4948136, at \*5 (citing *Tamburo,* 601 F.3d at 706).

As the Supreme Court and Seventh Circuit have made clear, then, regardless of whether Plaintiff was harmed in Illinois, Plaintiff cannot be the sole link between BVCPS and Illinois. *See Walden,* 134 S.Ct. at 1123; *Advanced Tactical,* 751 F.3d at 802. Therefore, Plaintiff cannot rely upon prior cases holding that courts in a state where a tort and injury occur have jurisdiction over tortfeasors. *See, e.g., Janmark, Inc. v. Reidy,* 132 F.3d 1200 (7th Cir.1997); *Russell v. SNFA,* 965 N.E.2d 1 (Ill.App.Ct.2011), *aff'd,* 987 N.E.2d 778 (Ill.2013). As an Illinois state appellate court has recognized, such arguments are "completely without merit" given both *Walden* and the abrogation of *Janmark* recognized by *Advanced Tactical Stoller v. Herbert,* No. 1–12–2876, 2014 WL 3953933, at\*3 (Ill.App.Ct. Aug. 13, 2014) (unpublished). It is therefore unsurprising that Plaintiff eventually concedes that her residence, standing alone, does not confer jurisdiction. Since BVCPS has no claims-related contacts with Illinois, Plaintiff's residence stands alone and is an insufficient basis to confer specific jurisdiction upon this court.

Because no special rule applies when torts are involved, BVCPS never purposefully directed claims-related activities at Illinois nor purposefully availed itself of the privilege of conducting business in Illinois, and no claims-related conduct connects BVCPS to Illinois, this court cannot exercise specific personal jurisdiction over BVCPS.

IV. GENERAL JURISDICTION

Plaintiff also argues that this court has general jurisdiction over BVCPS because, as can be seen by BVCPS' contacts with Illinois, BVCPS is doing business in a continuous and systematic fashion in Illinois. BVCPS, however, argues that it does not have sufficient contacts to allow this court to exercise general jurisdiction because it: (1) is headquartered in New York and incorporated in Massachusetts; (2) has no current office in Illinois and at most maintained a single employee at another company's office long before the Plaintiff filed suit; (3) has no real property in Illinois; (4) only employs two Illinois residents: one is stationed overseas; the other never interacts with clients; (5) maintains a website primarily for information purposes; (6) does not advertise its services specifically in Illinois; and (7) conducts only a limited amount of business in Illinois. This court agrees with BVCPS.

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 18 of 20 PageID #:2546

Shrum v. Big Lots Stores, Inc., Not Reported in Fed. Supp. (2014)
2014 WL 6888446

The general jurisdiction threshold is "high" and " 'considerably more stringent' than that required for specific jurisdiction." *Abelesz v. OTP Bank,* 692 F.3d 638, 654 (7th Cir.2012) (quoting *Purdue,* 338 F.3d at 787); *Tamburo,* 601 F.3d at 701. Defendants are subject to general jurisdiction—and can therefore be haled into court for any action, even one unrelated to a defendant's contacts with a forum state—if their contacts with a state are sufficiently " 'continuous and systematic' as to render [them] essentially at home in the forum State." *Goodyear,* 131 S.Ct. at 2851 (citations omitted); *N. Grain Mktg.,* 743 F.3d at 492 (citations omitted); *see also Daimler,* 134 S.Ct. at 751. This inquiry is not analogous to determining whether a defendant's "in-forum contacts can be said to be in *some* sense 'continuous and systematic.' " *Daimler,* 134 S.Ct. at 761 (emphasis added) (citations omitted). While a business is deemed at home in its place of incorporation and principal place of business, beyond these locations, "contacts must be sufficiently extensive and pervasive to approximate physical presence." *Abelesz,* 692 F.3d at 654 (citing *Goodyear,* 131 S.Ct. at 2853–54); *Tamburo,* 601 F.3d at 701 (citations omitted). However, even physical presence may not be sufficient to exercise personal jurisdiction over corporations because "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Daimler,* 134 S.Ct. at 762 & n.20. Rather, a court must assess a corporation's entire activities—nationwide and worldwide—and cannot deem a corporation to be "at home" in every place they operate. *Id.* To be sure, mere "isolated or sporadic contacts" or maintaining a public website certainly cannot, without more, establish general jurisdiction. *Tamburo,* 601 F.3d at 701 (citations omitted).

**\*7** Although BVCPS' contacts with Illinois are fairly extensive and deliberate, they do not satisfy the general jurisdiction standard because this court must assess the entirety of BVCPS' activities—not just the magnitude of its contacts with Illinois—in determining general jurisdiction. In *Daimler AG v. Bauman,* 134 S.Ct. at 760–762, the U.S. Supreme Court unanimously held that a company that was not incorporated in a state and did not have its principal place of business there was not subject to general jurisdiction, even were it to impute to the corporation its subsidiary's extensive contacts with the state. These contacts included having multiple facilities throughout the state, "continuous[ly] interacti[ng] with customers throughout" the state, and "direct[ly] distribut[ing] ... thousands of products accounting for billions of dollars in sales." *Id.* at 752; *id.* at 764 (Sotomayor, J., concurring). Like the corporation in *Daimler,* BVCPS is neither incorporated in the forum state nor has its principal place of business there. And compared to the contacts of the corporation in *Daimler,* BVCPS' contacts with Illinois are slim.

First, BVCPS has well over 100 offices and laboratories throughout the world, but it has no physical presence or office in Illinois. BVCPS does not own any real property in Illinois. While its online brochure contains a world map identifying an office in Chicago, Illinois, BVCPS states that it actually has no office there. Plaintiff does not contravene this assertion. And, while BVCPS' webpage listed a consulting office for BVCPS in Lisle, Illinois, when Plaintiff filed suit, the office actually belonged to an affiliated company and BVCPS' tie to that office—a sole employee—had long left its employ. But, even if this office were imputed to it, BVCPS would have less than one percent of its physical facilities located in Illinois.

Second, BVCPS has only an agent for the service of process in Illinois and two Illinois residents in its employ. BVCPS' maintenance of an agent for the service of process "does not rise to the level of 'continuous and systematic' contacts needed for the court to exercise general jurisdiction." *Rawlins,* 2014 WL 1657182, at \*5; *see also Crochet v. Wal-mart Stores, Inc.,* Civ. No. 6:11–01404, 2012 WL 489204, at \*4 (W.D.La. Feb. 13, 2012); *Davis v. Quality Carriers, Inc.,* Nos. 08–4533(SRC), 08–6262(SRC), 2009 WL 3335860, at \*3 (D.N.J. Oct. 15, 2009); *Hodges v. Deltic Farm & Timber Co., Inc.,* Civ. A. No. 90–3998, 1991 WL 42577, at \*2 (E.D.La. Mar. 28, 1991); *Palmer v. Kawaguchi Iron Works, Ltd.,* 644 F.Supp. 327, 331 (N.D.Ill.1986). As for BVCPS' employees, BVCPS only had one employee stationed in Illinois and one Illinois resident stationed overseas at the time of this lawsuit's filing. Even though one employee was the corporation's president and director, he had been stationed overseas for more than five years. The other employee is an information systems technician who has no contact with customers. And "the presence of a service representative" cannot "ordinarily confer jurisdiction over the corporation as to matters unrelated to those activities." *Palmer,* 644 F.Supp. at 331. Further, as a matter of fundamental fairness, BVCPS could not reasonably expect that, by employing one Illinois resident as a technician, it was exposing itself to defending in Illinois any claim from any party who filed suit in the State. Moreover, because BVCPS has over 100 facilities worldwide that must be staffed by employees, two Illinois employees constitute a small percentage of BVCPS' total employees.

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 19 of 20 PageID #:2547

**Shrum v. Big Lots Stores, Inc., Not Reported in Fed. Supp. (2014)**
2014 WL 6888446

Third, while BVCPS does conduct business in Illinois, it transacts only a small percentage of its overall business in the State. It is true that BVCPS filed form BCA 13.15 so that it could transact business in Illinois, solicits business in Illinois, owns imaging equipment in Downers Grove, Illinois, tests products manufactured in Illinois, and inspects products and performs factory assessments in Illinois. But, as the Supreme Court cautioned in *Daimler,* "[n]othing in *International Shoe* and its progeny suggests that a particular quantum of local activity should give a State authority over a far larger quantum of ... activity having no connection to any in-state activity." *Daimler,* 134 S.Ct. at 762 n.20 (citations and internal quotation marks omitted). And the Seventh Circuit held that, even when a company had "hundreds of thousands" of Illinois customers that "delivered many millions of dollars in revenue" to the company, the company did not have sufficient contacts with Illinois to satisfy the "demanding" general jurisdiction standard. *uBid,* 623 F.3d at 424, 426. Here, BVCPS conducted a small quantum of its overall activities in Illinois. During the first seven months of 2014, BVCPS conducted 0.39% of all of the inspections it performed and 3.33% of all of the factory assessments it performed in Illinois. And Illinois clients generated just 4.1% of BVCPS' total revenue for the first five months of 2014. Therefore, BVCPS' activities appear to be even less than those found insufficient in *uBid,* and BVCPS conducts a far larger quantum of activities outside of Illinois than inside it.

**\*8** Finally, while BVCPS is identified as doing business on several public websites that are accessible in Illinois, as well as worldwide, these websites primarily provide information about the company. The Seventh Circuit has consistently held that "the maintenance of a public Internet website" is not "sufficient, without more, to establish general jurisdiction." *Tamburo,* 601 F.3d at 701. And "limited contacts ... through the Internet do not make defendants essentially at home in the state and subject to general personal jurisdiction." *Snodgrass v. Berklee Coll. of Music,* 559 Fed.Appx. 541, 542 (7th Cir.2014). As a result, courts could not exercise general jurisdiction over a "web-based company which earned millions of dollars annually from Illinois customers and deliberately and successfully exploited [the] Illinois market" and a "company which utilized multiple interactive websites to market cigarettes that were sold and shipped to Illinois customers." *Snodgrass,* 559 Fed.Appx. at 543 (citing *uBid,* 623 F.3d at 426–29; *Illinois v. Hemi Group LLC,* 622 F.3d 754, 757–59 (7th Cir.2010)). Unlike those websites, the websites in question here are primarily designed to provide information about BVCPS' services and do not specifically target Illinois. As a matter of fact, BVCPS does not advertise its services specifically in Illinois through its website, or any other medium. Accordingly, BVCPS utilized its website as a means of doing business in Illinois to a lesser degree than the companies in both *uBid* and *Hemi Group*. Just as in those cases, then, BVCPS' website does not make it essentially at home in Illinois.

Ultimately, despite BVCPS' having significant contacts with Illinois as of the date of the filing of this suit, these contacts cannot satisfy the high general jurisdiction standard because this court must assess the entirety of BVCPS' activities—not just the magnitude of its contacts with Illinois. BVCPS conducts business worldwide and has well over 100 offices and laboratories worldwide. It has no physical presence or office in Illinois. It has only one agent for the service of process in Illinois and two Illinois residents in its employ: one has no contact with customers; the other has been stationed overseas for years. It acquired less than 5% of its total revenues from Illinois clients. And the public websites identifying BVCPS as doing business in Illinois are primarily designed to provide information about the company and do not specifically target Illinois. Accordingly, BVCPS activities in Illinois, when viewed in light of its out-of-forum activities, are not sufficiently systematic and continuous as to render it at home in Illinois, which precludes this court from exercising general personal jurisdiction.

Moreover, because no special rule applies when torts are involved, BVCPS never purposefully directed claims-related activities at Illinois nor purposefully availed itself of the privilege of conducting business in Illinois, and no claims-related conduct connects BVCPS to Illinois, this court cannot exercise specific personal jurisdiction over BVCPS.

Consequently, this court lacks personal jurisdiction over BVCPS, and BVCPS must be dismissed from this action.

IT IS THEREFORE ORDERED THAT:

(1) BVCPS' Motion to Dismiss Plaintiff's Amended Complaint (# 6) is GRANTED.

(2) BVCPS is terminated as a party in this action.

(3) This case is referred to Magistrate Judge David G. Bernthal for further proceedings.

Case: 1:20-cv-04196 Document #: 78-2 Filed: 08/15/22 Page 20 of 20 PageID #:2548

**Shrum v. Big Lots Stores, Inc., Not Reported in Fed. Supp. (2014)**

2014 WL 6888446

**All Citations**

Not Reported in Fed. Supp., 2014 WL 6888446

Footnotes

1  Plaintiff filed an amended complaint (# 3) on May 22, 2014.

2  Plaintiff's jurisdictional arguments are based on BVCPS committing a tortious act in Illinois and "doing business" within the State: either action would bring BVCPS under Illinois courts' jurisdiction under 735 Ill. Comp. Stat. 5/2209 (a)(2), (b)(4). However, "[t]he effects of an alleged tort are part of, not a substitute for, the analysis of a defendant's minimum contacts with the forum." *United States v. Kellogg Brown & Root Servs., Inc.,* No. 4:12–CV–4110–SLD–JAG, 2014 WL 4948136, at *5 (C.D.Ill. Sept. 30, 2014) (citing *Medallion Prods., Inc. v. H.C.T.V., Inc.,* No. 06–C–2597, 2007 WL 3085913, at *6 (N.D.Ill. Oct. 18, 2007); *see also Wallace v. Herron,* 778 F.2d 391, 395 (7th Cir.1985). And the long-arm statute's "doing business" standard is "virtually identical to the federal requirement for general personal jurisdiction that a party maintain continuous and systematic business contacts with the forum." *Cent. States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.,* 530 F.Supp.2d 1008, 1016 (N.D.Ill.2008). Therefore, Plaintiffs arguments are adequately addressed by this court's analysis of whether exercising general or specific personal jurisdiction over BVCPS would comport with federal due process requirements.

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.