**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **WHAM-O HOLDING, LTD. and** | ) | |
| **INTERSPORT CORP. d/b/a Wham-O,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 4196** |
| | ) | |
| **THE PARTNERSHIPS AND** | ) | |
| **UNINCORPORATED ASSOCIATIONS** | ) | |
| **IDENTIFIED ON SCHEDULE "A,"** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER ON DEFENDANT PARTLAND'S MOTION TO VACATE</u>

Wham-O Holding, Ltd. and Intersport Corp. (collectively Wham-O) sued several

dozen defendants, initially identified only by the names of their online stores, for offering

and selling counterfeit and/or infringing products using Wham-O's "Frisbee" trademark.

Wham-O alleged that the defendants, all of which were located overseas, were offering

and selling infringing products in the United States, including in Illinois.  Wham-O initially

obtained a temporary restraining order and then a preliminary injunction freezing the

defendants' accounts with Amazon (and perhaps other online marketplaces).  Wham-O

settled with some defendants and dismissed others, and it sought a default judgment

against the rest.  The Court entered a default judgment in late September 2020 that

enjoined further infringement; effectively shut down the online stores; awarded Wham-O

statutory damages against each remaining defendant for willful infringement and

counterfeiting; and transferred the frozen funds held by Amazon to Wham-O.  *See* Dkt.

no. 48.

About twenty-two months later, in late July 2022, one of the defendants, identified as PartLand, filed a motion to vacate the default judgment, claiming lack of personal jurisdiction in this district.  The Court held the motion in abeyance to allow some discovery relating to jurisdictional facts, and the parties then briefed the motion to vacate.  Now before the Court are the motion by PartLand—not its real name, as discussed below—to vacate the default judgment against it and Wham-O's later motion to strike PartLand's submission on the ground that it was submitted not actually by or on behalf of PartLand but rather on behalf of a former employee of the now-defunct entity.

It appears that $40,000 in frozen funds were transferred by Amazon to Wham-O as a result of the judgment.  The Court says "it appears" because it finds in neither side's submissions (of which there are six altogether) any evidence relating to the frozen funds or documenting the oddly round amount.  But because both sides seem to agree this is the amount that was transferred, the Court will adopt it as an effectively stipulated fact.

PartLand apparently isn't the real name of the entity that Wham-O sued.  Its real name, it appears, is Jinan Tianxuan Furniture Co., Ltd., which the Court will refer to as JTF.  That wasn't disclosed by PartLand in its motion; it came out in Wham-O's response after it had conducted some discovery.  JTF is—or rather, apparently, was—a Chinese corporation.  The evidence is undisputed that its right to do business was revoked by the government of China.  JTF doesn't appear to be conducting any operations at all, and it appears it wasn't doing so even when the motion to vacate was filed.  And the Court has no clue—and PartLand/JTF hasn't said—who owns JTF.

The motion to vacate appears to have been filed at the instance of a former

commissioned salesperson for PartLand/JTF named Chen Kai.  Mr. Chen's[1] relationship with JTF is somewhat murky, and PartLand/JTF has not made a great deal of effort to clear it up.  The parties have both attached excerpts from Mr. Chen's deposition testimony to their submission, but no one provided the full deposition, which might have enabled the Court to get a fuller picture.  Here's what the Court can glean from the material submitted.

There are references in Mr. Chen's deposition testimony to someone named Pan Haining, who conceivably may be the owner of JTF—but the Court can't be sure from the limited excerpts presented.  *See* Dkt. no. 107-3, Chen dep. at 63, 65.  There is no indication, however, that the decision to file the motion to vacate was made by Pan Haining.  Rather, the decision was made by Mr. Chen.

Mr. Chen testified that he was employed by JTF from 2018 to 2020.  When asked whether he had any involvement with JTF "after the termination of [his] employment in 2020," Mr. Chen said "I'm only responsible for dealing with this issue," namely the lawsuit.  *Id.*  at 164.  But there's no explanation of how he got that responsibility, when, or from whom.  When asked who he is in contact with from JTF, Mr. Chen's answer was, basically, no one:  "I don't need to contact anyone in the company.  I'm in total charge of the store, so I would address the problem by myself.  Since the company is shut down there's no one for me to contact with.  Now I'm dealing with the problem regarding the transfer of the money."  *Id.*

---

[1] The Court will refer to Chen Kai as "Mr. Chen" because, in China, an individual's surname typically is written first.  But the Court is not sure it is getting this right in this situation.  The parties call him "Mr. Kai" in their filings, but when he had his deposition taken, the questioner referred to him as "Mr. Chen."

（無）

When asked whether he could "confirm you are the only beneficiary from operating the online store PartLand," Mr. Chen was less than clear:  "Not in the past, maybe in the future."  *Id.* at 165.  When asked, "How so in the future? The company doesn't exist anymore," Mr. Chen replied, somewhat cryptically, "So even though the – the store is entirely shut down I still wish to make an appeal to Amazon to see if I can save the store back.  Of course that's after this problem is addressed."  *Id.* at 165-66.

During the second session of his deposition, Mr. Chen testified that he had a commission agreement with JTF to manage the Amazon store PartLand.  *Id.* at 9.  He stated, however, that he had "no other agreements" with JTF.  *Id.* at 10.  Mr. Chen further stated that after he left the company in 2020, he continued to manage the Amazon store.  *Id.* at 11.  When asked who instructed him to "file this lawsuit"— presumably a somewhat botched reference to the filing of the motion to vacate—Mr. Chen said—consistent with his testimony during the first deposition session—that he "made his own decision."[2]  *Id.* at 22.  Later Mr. Chen testified that JTF "has been bankrupt," and when asked whether JTF had knowledge that "it" had hired counsel in Illinois to appear in this case, he said, "It's only decision decided by [me]."  *Id.* at 33.

After this, Mr. Chen was asked questions about the $40,000 transferred by Amazon to Wham-O as a result of the default judgment.  The Court can't really do justice to this by summarizing it, so it will quote Mr. Chen's testimony in full:

> Q:     Okay.  This sentence in Paragraph 10 [of Mr. Chen's affidavit] states that, "I hired counsel . . . to make an appearance and represent by my rights and interest in this matter."  Would you please describe what do

---

[2] During the second session of Mr. Chen's deposition, the interpreter apparently was not directly translating Mr. Chen's answers word for word but rather was referring to Mr. Chen, the witness, in the third person.  To illustrate:  "Q:  So who instructed you to file this lawsuit on the company's behalf?  A:  He made his own decision."  *Id.* at 22.

you mean by "my rights and interests," who you identify [sic] your rights and interests in this matter?

A:      Yeah.  So his rights and benefits refers to the Plaintiff has, you know – as to Amazon – money.  Amazon has transferred the 40,000 U.S. dollars to Plaintiff, you know, without the note – getting notice him and, also, it impact his interest with regard to the Frisbee product.  So he think that his formal right is that the Amazon or the Plaintiff should transfer back – this amount of money back to him because actually there is no outbound activity of his product being sent too.  He think it's justified enough to send back this money to him.

Q:      Your testimony – could you confirm that you just testified you have an interest in the $40,000 transferred from the Amazon store PartLand to the Plaintiff?  Could you please confirm that?

A:      (In English.)  Yes.

A:      (Through the Interpreter.)  Correct.

Q:      What is the percentage of this – of your interest in the $40,000 transferred by the Plaintiff.

A:      No comment.  Sorry.

. . .

Q:      So the witness has refused to answer the question.

A:      So he has to be an answer to your question, he didn't – he cannot – he still take some – require some time to think over of it, and he could – he cannot give you the answer right now.

Q:      . . .  We can wait.  How much time does he need?

A:      So the 40,000 U.S. Dollar total, it's – it was with regard to his own personal interest on this.

. . .

Q:      So from our understanding the witness answer – the witness answer to that question was, the witness, Chen Kai, has 100 percent interest in all of the $40,000 transferred from Plaintiff – from the store PartLand by Plaintiff.  Witness, could you please confirm that is a correct statement?

5

A:      That's correct.

*Id.* at 33-36.  There is no testimony or other evidence, however, regarding how, from whom, or when Mr. Chen obtained his claimed 100 percent interest in the $40,000.

It's important to think concretely about the situation before the Court.  If JTF no longer operates or exists as an entity—as appears to be the case—the forward-looking aspects of the judgment aren't really at issue, at least not at the moment.  By "forward-looking aspects" the Court means collection by Wham-O of the remainder of the statutory damages award that it obtained, and enforcement of the injunction.  To put it another way, there's no JTF still around to collect from.  Additionally, there's no basis for the judgment to operate, on a going-forward basis, against Mr. Chen, who is not individually a defendant but rather is simply a former employee of the entity that Wham-O sued.  Instead, what's at issue is the $40,000 that Wham-O already obtained via the judgment:  the funds that JTF/PartLand had at Amazon that were initially frozen and then transferred to Wham-O.  The question before the Court as presented by PartLand's motion appears to be, does Wham-O get to keep the $40,000, or is Mr. Chen entitled to it?

On this point, the Court notes that Mr. Chen initially stated, quite clearly, that never had any ownership interest in JTF.  *See id.* at 41.  But then he modified even this, albeit in a rather murky way that PartLand has not cleared up:  "Q:  No ownership; is that correct?  A:  Yeah, that's correct.  Except for the Amazon part."  *Id.*  at 42.  Then when asked to explain, Mr. Chen indicated that he had no ownership of the company but rather managed the company's Amazon operation, though he said that was in return for a commission, *see id.*—*not* the entirety of the sale proceeds that PartLand collected,

6

which is what the Amazon account likely held.

This somewhat confusing factual scenario is part of what led Wham-O to move to strike PartLand's motion to vacate. As indicated, the Court ordered further briefing on the motion to strike. The parties, in their submissions on the motion to strike, talk in terms of who is the "real party in interest." To be fair, the Court used that same language in ordering further briefing on the motion to strike. But "real party in interest" is a term typically used in reference to the plaintiff in a lawsuit, not a defendant like PartLand. *See* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). What is actually at issue on the motion to vacate seems to be who gets the $40,000 if the Court vacates the judgment. And that's where the problem lies: if Wham-O collected $40,000 that it wasn't entitled to collect because personal jurisdiction is lacking, that $40,000 needs to go to its owner. But the judgment that Wham-O obtained was against PartLand (and thus, likely, against JTF, of which PartLand appears to be simply a d/b/a). If the Court vacates the judgment but the $40,000 goes to the wrong person or entity, Wham-O runs the risk of multiple liability: what if Mr. Chen gets the money and then an official representative—or a bankruptcy trustee or the equivalent—of JTF surfaces and says *it* was entitled to the money?

The Court can imagine a scenario in which PartLand and Mr. Chen's submissions would have cleared this up. But they haven't. And as the moving party, it was PartLand's responsibility to establish its entitlement to the relief it sought. In the Court's view, it has not done so. The motion to vacate was filed purportedly on behalf of "PartLand," which at this point doesn't actually seem to be a legal entity—rather it's what one would call in the U.S. a "d/b/a" or an assumed name of the corporate entity

7

JTF.  There's no way for the Court to know, on the present record, whether PartLand,

Mr. Chen, or JTF, someone else, or some combination had, at the time of the asset

freeze, the right to the funds (or to *all* the funds) in the Amazon account in question.

There's every reason to believe that such information would be readily available (e.g.,

via documentation at Amazon) to PartLand, Mr. Chen, and/or JTF—particularly given

Mr. Chen's claim that he was responsible for operating the online store.  But the movant

has offered no evidence on this point.  Again, it should be easy to obtain:  absent the

lawsuit, Amazon would have paid the $40,000 to *someone*.  But PartLand has offered

nothing in this regard.

Instead, all the movant has offered is Mr. Chen's testimony—which to some

extent seemed to go back and forth—indicating that he has the rights to the money.

The Court has nothing other than his say-so, and given the conflicts in his testimony

and the other points noted above, that's not good enough.  Among other things, there's

no indication of who conferred the right to the Amazon funds upon him, when, or how,

and as indicated the movant has offered no documentation of any such arrangements at

all.  On the present record, it's entirely possible that Mr. Chen is simply an employee

who didn't get paid by JTF and is hoping to sweep up whatever he can in order to get

recompense.  There's no basis, aside from Mr. Chen's less-than-clear testimony, to

support a finding that he is legally entitled to the funds Amazon was holding on

PartLand/JTF's behalf.

Because Mr. Chen's authority to pursue the relief sought by the motion to vacate

has not been shown, the Court grants Wham-O's motion to strike [78].  The motion to

vacate filed by or on behalf of PartLand is stricken, without prejudice [106].  The Court

8

9

has included the "without prejudice" language because it cannot rule out the possibility

that PartLand could submit a renewed motion that addresses the issues and

deficiencies in its current submission.  The telephonic status hearing set for 3/28/2023 is

vacated.

Date:  March 26, 2023

_____
MATTHEW F. KENNELLY
United States District Judge